UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| DIANA L. DAUENHAUER, | ) | No. ED CV 12-00375-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.  Whether the Administrative Law Judge ("ALJ") erred in

```
 1                rejecting the opinions of treating rehabilitation specialist
 2                Goodlow and examining psychologist Berg; and
 3       2.   Whether substantial evidence supports the ALJ's finding that
 4                Plaintiff's subjective testimony is not credible. (JS at 7.)
```

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

## I

**THE ALJ CORRECTLY ASSESSED THE OPINIONS OF DRS. GOODLOW AND BERG**

In her first issue, Plaintiff contends that the ALJ erred in assessing the opinions of Dr. Goodlow, a rehabilitation specialist, and Dr. Berg, an examining psychologist ("CE"). The Court will address these in turn.

The ALJ determined that Plaintiff has the following severe impairments: kidney stones with chronic abdominal pain; a somatoform disorder; depressive disorder not otherwise specified ("NOS"); personality disorder with schizoid, avoident, histrionic, and borderline traits. (AR 22.)

Based on evaluation of the entire record, the ALJ determined that Plaintiff's residual functional capacity ("RFC") allows her to perform less than a full range of medium work, but allows Plaintiff to lift and/or carry 50 pounds occasionally and 25 pounds frequently; push and pull within the same weight limits; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; and frequently climb

stairs, stoop, kneel, and crouch.[1]

The ALJ noted that Plaintiff has a history of kidney stones with abdominal pain, diverticulosis, and irritable bowel syndrome. (AR 26.) Examining physicians Drs. Kestenbaum and Atchison found no clear cause for Plaintiff's pain in her gastrointestinal system. (AR 277-280.) Plaintiff continually complained of abdominal pain, and was prescribed medication and exercise.  In August 2009, medical imaging showed an unremarkable colon. (AR 736-737.)

After not seeing a physician between June and October 2008, Plaintiff saw Dr. Goodlow on October 8, 2008. (AR 402-403.) Plaintiff exhibited some tenderness during the examination, but otherwise there were overall normal results. (Id.)  Dr. Goodlow prescribed that Plaintiff should receive medication and a back brace and return for a followup in four weeks. (Id.)

Plaintiff received imaging of her kidney, ureter, and bladder in November 2008 which yielded unremarkable results. (AT 434-435.)  She still complained of abdominal pain through August 2009 but again, the examination findings and the treatment that was prescribed did not change. (AR 406.)

In November 2009, at her own request, a physician cleared Plaintiff to return to work at full capacity.  She had no complaints of pain at that time. (AR 664, 711.)  In January 2010, Plaintiff was seen by Dr. Anderson as to her complaints of pain, but the examination was overall normal. (AR 737-738.)

In May 2010, a urologist, Dr. Prusa, examined Plaintiff in connection with her kidney stone issue and reported an overall normal

---

[1]   The non-exertional portion of Plaintiff's RFC will be discussed infra.

examination. Plaintiff told Dr. Prusa that she passes kidney stones, but admitted she never actually saw any. (AR 726.) A recent test had shown one to two millimeter renal stones but they were in a non-obstructing position which could not cause pain. Based on this, the ALJ determined that Plaintiff's symptoms and her complaints were adequately addressed by conservative treatment.

On May 30, 2009, Dr. Idos performed an internal medicine CE. (AR 632-639.) Plaintiff complained that she had abdominal pain, reported that she took medication, acupuncture and physical therapy, and that she had some medication side effects of constipation. (Id.) On examination, however, Plaintiff did not appear to be in any acute distress and had only slight tenderness to palpitation in the abdomen. She had normal range of motion in her back and in her upper and lower extremities. Neurologically, she retained good muscle control and full motor strength, intact sensation, normal reflexes and normal gait. (AR 634-635.) Based on these findings, Dr. Idos rendered the opinion that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently; and other than some limitation in pushing and pulling, bending, stooping, crouching and climbing, could perform the functions required in a full time workday. (AR 637.)

Similarly, two State Agency reviewing physicians opined that Plaintiff could perform medium work with occasional postural limitations. (AR 651-655, 656-657, 659-660.)

Based on this evidence, the ALJ rejected the conclusion of Dr. Goodlow that Plaintiff was disabled. After the ALJ rendered his Decision, Dr. Goodlow submitted a Multiple Impairment Questionnaire dated March 9, 2011, which opined that Plaintiff was effectively disabled based on an ability to sit, stand and walk for only one hour,

occasionally lift and carry ten pounds, and would miss more than three days of work a month due to her impairments over a twelve-month or more period. (AR 777-785.)  The ALJ did not review this form, but it was reviewed by the Appeals Council, which found no reason to overturn the ALJ's Decision. (AR 1-6.)

The ALJ found Dr. Goodlow's opinion to be unsupported by and inconsistent with the overall clinical medical evidence in the record. (AR 28.)  It is fundamental that the ALJ must perform the function of evaluating all medical evidence in the record.  As summarized above, there is ample medical evidence in the record to rebut Dr. Goodlow's conclusion that Plaintiff is disabled.  Moreover, the March 2011 questionnaire, even if it had been considered by the ALJ (and it was considered by the Appeals Council), contains several internally inconsistent conclusions.  In that questionnaire Dr. Goodlow indicated that Plaintiff had back spasms, loss of lumbar curvature, and back pain, and that she was limited in her manipulative activities. (AR 778-779, 782.)  Yet, there are no medical records in Plaintiff's very extensive file which indicate any complaints as to back pain or limitations due to this issue, or problems with her hands in terms of an ability to perform manipulative activities. (See AR 635, Report of Dr. Idos showing "No muscle spasm" in the back, "straight leg raising test is negative," and normal range of motion in the back.)  The treatment records indicate no evidence of such reported problems by Dr. Goodlow.  Further, as the Commissioner notes, Dr. Goodlow indicated in the questionnaire that he based his diagnosis on a colon barium enema. (AR 779.)  The actual results of that test revealed unremarkable results. (AR 700.)

It was not incumbent upon the ALJ to simply accept the opinion of

Dr. Goodlow. Rather, he was obliged to examine all the evidence in the record, a substantial amount of which was contradictory to Dr. Goodlow's conclusions, as the Court has noted. All in all, the ALJ's rejection of Dr. Goodlow's opinion is supported by the medical evidence.

Plaintiff also contends that the ALJ improperly rejected the opinion of Dr. Berg as to Plaintiff's mental residual functional capacity ("MRFC").

The ALJ limited Plaintiff to non-public, simple, repetitive tasks and limited her to non-intense interaction with co-workers and supervisors. She was precluded from fast-paced work and tasks that require hypervigilance. (AR 23.)

The foregoing MRFC is supported by substantial evidence in the record, which the Court will briefly summarize. First, Plaintiff received no apparent psychiatric care from November 2007 to January 2010. While Plaintiff's counsel asserts that the Court cannot rely upon this lack of treatment, especially in the mental health context, the Court disagrees that this conclusion is mandated in this case. Plaintiff very actively sought treatment from Kaiser Permanente for all sorts of other ailments during the relevant period of time, and, as the ALJ noted, Plaintiff realized that she was depressed because of her physical limitations. (AR 24.) It is untenable to assert that Plaintiff actively sought treatment for her physical conditions, but not for any mental depression or other condition. Considering the disability statement of Dr. Berg, who examined Plaintiff on May 20, 2010 and completed a Psychiatric/Psychological Impairment Questionnaire form on May 27, 2010 (AR 29, 717-724), it was the ALJ's conclusion that Dr. Berg's examination findings were "largely benign,"

6

and he noted that Plaintiff reported to Dr. Berg that she could do daily activities including preparing breakfast, unloading the dishwasher and quilting. Dr. Berg indicated his opinion that Plaintiff is unable to work a full time job, rating her limitations as marked in her ability to get along with coworkers and moderately limited in most other areas. It was Dr. Berg's conclusion that Plaintiff would miss more than three workdays per month. (Id.) The ALJ indicated that Dr. Berg's limitations were inconsistent with his own findings and not supported by other medical source opinions discussed in the Decision. The ALJ gave greatest weight to the opinion of the medical expert ("ME"), Dr. Glassmire, who is board certified in forensic psychology. Some weight was given to the opinion of the consultative psychiatric examiner ("CE"), Dr. Andia. (Id.)

With regard to the mental health evidence in the record, a mental status exam performed at Kaiser Permanente in October 2007 indicated that despite Plaintiff's complaints of anxiety, depression, fatigue, and poor concentration, she was treated with medication and had, upon examination, appropriate mood, normal speech, vocabulary, cooperative behavior, was alert and oriented, could abstract and generalize at the average level, had intact memory both recent and remote, and no homicidal or suicidal ideation.

The aforementioned psychiatric CE with Dr. Andia was also relied upon by the ALJ, who noted that Dr. Andia took a mental health history from Plaintiff, reported on mental status examination that she had a mildly depressed and anxious mood, but otherwise there were unremarkable findings. (AR 27, 626-628.) Plaintiff reported to Dr. Andia that she could do normal activities of taking care of herself.

7

1  (Id.) She could drive a car, had various hobbies, could handle
2  finances, was able to go out alone, had reasonably good relationships
3  with friends and family, and had no difficulty with focusing
4  attention, completing household tasks, or making decisions. (Id.)
5  Based on all this, Dr. Andia rendered the opinion that Plaintiff was
6  able to understand, remember and carry out simple and detailed
7  instructions; relate and interact with coworkers and the public; could
8  maintain concentration and attention; and was able to perform day-to-
9  day work activities and accept instructions from a supervisor. (AR
10 629.) The ALJ actually assessed greater mental limitations than did
11 Dr. Andia based on treatment records and Plaintiff's own testimony.
12 (AR 30.) Essentially, the ALJ rejected Dr. Berg's diagnostic
13 conclusions, because they were inconsistent with his overall benign
14 examination findings. (AR 29.) Further, the ALJ gave greatest weight
15 to the opinion of the testifying ME who had reviewed the file. Dr.
16 Glassmire testified that Plaintiff had only mild limitations in her
17 activities of daily living and in concentration, persistence or pace;
18 moderate difficulties in social functioning; and no episodes of
19 decompensation. (AR 41.) Dr. Glassmire relied on the examinations of
20 Drs. Berg and Andia in reaching his conclusions.

21 The resolution of any conflicts in the evidence was a matter for
22 the ALJ's determination, and here, the Court concludes that
23 substantial evidence supports the ALJ's conclusions which rejected Dr.
24 Berg's disability findings.

**II**

**THE ALJ PROPERLY DETERMINED PLAINTIFF'S CREDIBILITY**

The ALJ partially depreciated Plaintiff's credibility as to her

subjective symptoms, and explained the reasons in the Decision. (AR 23-25.) Plaintiff contends that the ALJ's reasoning is inadequate and legally insufficient. The question for the Court is whether the ALJ's specific credibility findings are entitled to deference. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Social Security Ruling ("SSR") 96-7p. Here, the ALJ cited at least five credibility factors in his Decision. First, he concluded that the objective evidence did not fully support her complaints. It is of course the case that a contradiction between subjective pain complaints and objective medical evidence is not permissible as the sole basis for depreciating credibility, but it is one factor which can be considered. The Court has already summarized the medical evidence, and will not do so again. Suffice it to say that there is a rational basis to find a disconnect or at least contradiction between Plaintiff's severe disabling pain complaints and the objective medical evidence in the record. Further, as the Court has already noted, in November 2009, at her own request, Plaintiff was cleared to return to work at full capacity.

The ALJ also properly relied upon the fact that Plaintiff took prescribed medication and utilized other conservative measures to treat what she claimed were very severe physical and emotional symptoms. Use of conservative treatment can undermine a claim of disabling pain symptoms.

Further, the ALJ determined that Plaintiff's complaints that she had restrictive side effects from medication were not fully credible. Here, there is not evidence of objective documentation in the record of such complaints, and the lack of objective evidence is a factor upon which an ALJ can rely.

The ALJ also relied upon Plaintiff's level of daily activities to

rebut her claims of disabling pain. (AR 24-25.)

Finally, the ALJ properly relied upon certain inconsistencies in Plaintiff's testimony. For example, at one point she asserted that she stopped working in August 2008 due to advice of her doctor, but this is contradicted by the fact that there are no records of any statement by Plaintiff's doctors between June and October 2008 that she could not work due to abdominal pain.

The Court finds that the ALJ articulated sufficient reasons to depreciate Plaintiff's credibility, and thus, rejects Plaintiff's contention of error in her second issue.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: January 7, 2013  　　　　　　　/s/  
　　　　　　　　　　　　　　　VICTOR B. KENTON  
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

10